UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| STERETT CRANE AND RIGGING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16-cv-00094-JMS-DML |
| | ) | |
| WHITE CONSTRUCTION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>ORDER</u>**

Plaintiff Sterett Crane and Rigging, LLC ("<u>Sterett</u>") is a limited liability corporation in the business of renting cranes for use on construction projects. Defendant White Construction, Inc. ("<u>White</u>") is a corporation engaged in providing construction services for various wind farm projects across North America. On April 17, 2014, White and Sterett entered into a Service Agreement for the rental of a Terex Demag 2800 660-ton crawler crane (the "<u>Crane</u>") for White's use at the Headwaters Wind Farm Project in Winchester, Indiana (the "<u>Project</u>"). Sterett initiated this litigation against White, alleging that it breached the terms of the Service Agreement when the Crane was damaged while moving from one site of the Project to another and was not returned to Sterett in as good of a condition as it was when White received the Crane.

Presently pending is a Motion for Partial Summary Judgment filed by Sterett, which relates only to its breach of contract claim. [Filing No. 52]. Also pending is a Motion for Oral Argument on Sterett Crane & Rigging, LLC's Motion for Partial Summary Judgment filed by White, [Filing

No. 68]¹, and a Motion for Leave to File Surreply in Opposition to Plaintiff's Motion for Partial Summary Judgment filed by White, [Filing No. 72].

# I.
## MOTION FOR LEAVE TO FILE SURREPLY

Before analyzing the parties' substantive arguments in connection with the Motion for Summary Judgment, the Court will consider White's Motion for Leave to File Surreply. [Filing No. 72.] This is necessary because the motion relates to the scope of information that the Court could consider in deciding the Motion for Summary Judgment.

In support of its motion, White argues that Sterett objected to the admissibility of evidence White relied upon in its response brief because it is impermissible parol evidence, so a surreply is appropriate. [Filing No. 72 at 1.] White also contends that it should be permitted to "rebut the argument that the Court should not consider White's sworn affidavits and testimony as 'self-serving'…." [Filing No. 72 at 2.]

Sterett argues in response to White's motion that it did not argue in its reply that the parol evidence at issue is inadmissible, but only that it is not material or relevant, and is "barred from consideration by the integration clause that is part of the contract…between the parties." [Filing No. 73 at 2.] Sterett also asserts that its argument regarding White's affidavit being self-serving is not about admissibility, but rather is that the affidavits are "immaterial because they are so vague and ambiguous that they cannot create an issue of fact." [Filing No. 73 at 2.]

On reply, White argues that relevancy and materiality relate to the admissibility of evidence, so its surreply should be permitted to address the parol evidence. [Filing No. 74 at 1.]

---

¹ The parties' briefs have afforded the Court an adequate basis on which to rule on the pending Motion for Summary Judgment without the assistance of oral argument. Accordingly, the Court **DENIES** White's Motion for Oral Argument, [Filing No. 68].

Local Rule 56-1(d) permits the filing of a surreply "only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response." The Court rejects White's argument that Sterett objects to the admissibility of the parol evidence in its response brief. Rather, Sterett argued in its response that the Court should not consider the parol evidence because the Service Agreement "was fully integrated." [Filing No. 70 at 7.] Whether evidence is admissible under the Federal Rules of Evidence and whether the Court should consider evidence based on a contract's integration clause are distinctly different concepts, and White cannot address the latter in a surreply. The Court also notes that Sterett argued in its initial brief in support of its Motion for Summary Judgment that the Court should look to the language of the contract and that if an "ambiguity arises because of the language used in the contract and not because of extrinsic facts, then [the contract's] construction remains a pure question of law to be determined by the Court." [Filing No. 53 at 6.] White had ample opportunity to address whether the Court should look outside of the contract in its response brief and, indeed, did so. [*See, e.g.*, Filing No. 67 at 12 (arguing that the Court should consider parol evidence since the parties "agreed to oral terms outside of the written documents").]

The Court also rejects White's characterization of Sterett's argument that White presented "self-serving" affidavits as one related to admissibility. Sterett argues in its reply that "self-serving" evidence should not be considered and "cannot preclude summary judgment." [Filing No. 70 at 9 (quotation and citation omitted).] It does not, however, argue that the evidence is inadmissible.

The Court **DENIES** White's Motion for Leave to File Surreply in Opposition to Plaintiff's Motion for Partial Summary Judgment, [Filing No. 72], because it addresses matters that are not within the scope of Local Rule 56-1(d).

## II.
### MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

### B. Statement of Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, the facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to White as the non-moving party, drawing all reasonable inferences in its favor. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000). The Court will therefore credit White's version of the facts, as it is required to do.

*1. The Parties' Agreement*

In the spring of 2014, White contacted Sterett to rent the Crane for White's use in connection with the Project. [Filing No. 65-1 at 3.] White and Sterett had entered into rental agreements in the past and White continues to enter into rental agreements with Sterett. [Filing No. 65-1 at 2.] Not all of the rental agreements contain the same terms and conditions, and White customizes its agreements with crane providers by tailoring those terms and conditions to meet their needs. [Filing No. 65-1 at 2-3.]

On April 17, 2014, Sterett and White entered into a Service Agreement, whereby Sterett agreed to lease the Crane to White for its use in connection with the Project. [Filing No. 52-2 at 2.][2] Randy Alan Peterson, White's Crane Fleet Manager, attested that the Service Agreement White sent was only one page, and did not include any other terms. [Filing No. 65-1 at 3.] Mr. Peterson signed the first page of the Service Agreement on April 17, 2014, and sent it back to Sterett with the understanding that the purpose of his signature was to reserve the Crane for White's use later in the summer. [Filing No. 65-1 at 3.] White sent the signed page to Sterett on April 25, 2014. [Filing No. 52-5 at 1; Filing No. 65-1 at 3.] The second page of the Service Agreement (the "Bare Rental Terms"), bears a signature on May 21, 2014, but Mr. Peterson, who is familiar with the signatures of White employees who have authority to sign contracts on behalf of White, does not recognize the signature that appears on the Bare Rental Terms. [Filing No. 52-5 at 2; Filing No. 65-1 at 4.]

The Service Agreement provides that White agrees to rent the Crane for $95,000 per month. [Filing No. 52-5 at 1.] The Service Agreement also states that White accepts the terms of

---

[2] White entered into the Service Agreement with Sterett Construction Company, Inc., who then assigned all of its rights under the Service Agreement to Sterett. [Filing No. 52-2 at 3.] The Court refers to the two Sterett entities interchangeably.

the sale, and agrees that if payment is not received within thirty (30) days of the invoice date, Sterett may charge a 1.5% late fee per month on any outstanding balance. [Filing No. 52-5 at 1.] Additionally, the Service Agreement obligates White to pay any costs of collection for any unpaid amounts, including attorney's fees. [Filing No. 52-5 at 1.]

The Bare Rental Terms state that White is obligated to return the Crane to Sterett in as good condition as it was received, regardless of the cause of damage or loss, upon termination of the Service Agreement. [Filing No. 52-5 at 2.] The Bare Rental Terms also explain that the term of the lease commences upon delivery to White and terminates on the date that the Crane is returned to Sterett, and also contemplates the continuous rental of the Crane at the agreed upon rate regardless of White's inability to utilize the Crane due to breakdown, weather conditions, or any other cause. [Filing No. 52-5 at 2.] Finally, the Bare Rental Terms contain a provision which states that "[t]his Lease constitutes the entire agreement between Lessor and Lessee with respect to this transaction. It is expressly agreed that there are no promises or understandings related to this transaction that are not set forth in this Lease…." [Filing No. 52-5 at 2.]

### 2. *White Uses a Sterett Crane Operator*

White maintains that during the contract negotiations, Sterett insisted as a condition to entering into the Service Agreement that White man the Crane with a Sterett crane operator. [Filing No. 65-1 at 3.] This arrangement is known in the industry as a "manned and maintained contract," which typically provides that the crane operator is responsible for operation of the crane, the lessor who provided the operator bears the risk of loss, and the lessee is not obligated to pay for loss incurred during use (including physical damage to the crane or damage from loss of use of the crane). [Filing No. 65-1 at 3.] Conversely, when parties enter into what the industry refers to as a "bare rental contract," the lessee provides the operator. [Filing No. 65-1 at 3.] Sterett

provided an operator for the Crane, Jack Robert Freestone. [Filing No. 65-1 at 3; Filing No. 65-2 at 8-10; Filing No. 65-3 at 6-8.] White was familiar with Mr. Freestone from using him on other jobs, and considered him untrustworthy, careless, unreliable, and an all-around troublemaker. [Filing No. 65-3 at 7; Filing No. 65-12 at 7-8.] However, over White's objection, Sterett provided Mr. Freestone as the Crane operator. [Filing No. 65-2 at 10-11.] When the parties orally agreed that White would use a Sterett Crane operator, White claims that Sterett also assumed the risk of loss in the event of damage to the Crane under a "manned and maintained" arrangement. [Filing No. 65-1 at 3.]

       3. *Damage to the Crane*

On June 23, 2014, Sterett delivered the Crane to the Project in good, working condition and White began using the Crane on the Project on or about July 1, 2014. [Filing No. 52-2 at 2.] On July 22, 2014, the Crane operator provided by Sterett, Mr. Freestone, attempted to maneuver the Crane across a creek over which a rock bridge had been constructed. [Filing No. 65-7 at 9.] Mr. Freestone used stabilizing crane "mats" to cross the creek. [Filing No. 65-7 at 9.] While driving over the mats, Mr. Freestone lost control of the Crane and it tipped over and was damaged. [Filing No. 52-5 at 2; Filing No. 65-7 at 9.]

Sterett determined that repairing the Crane was the best alternative in light of the time and the costs that would be incurred. [Filing No. 52-2 at 2.] As a result of the damage and the necessary repairs, the Crane was out of service for approximately six (6) months. [Filing No. 52-2 at 2.] While the Crane was inoperable and undergoing repairs, rental charges in the amount of $600,900.00 accrued under the Service Agreement. [Filing No. 52-2 at 2.] Additionally, interest in the amount of $240,642.46 has accrued on the unpaid rental charges and continues to accrue at the rate of $300.00 per diem. [Filing No. 52-2 at 3.]

*4. The Lawsuit*

Sterett initiated this lawsuit on January 12, 2016, [Filing No. 1], and filed the operative Amended Complaint on January 28, 2016, [Filing No. 12]. Sterett asserts claims for negligence, negligence *per se*, and breach of contract. [Filing No. 12 at 3-6.] Sterett has moved for summary judgment on its breach of contract claim, [Filing No. 52], White opposes the motion, [Filing No. 67], and it is now ripe for the Court's decision.

**C.     Discussion**

In support of its Motion for Summary Judgment, Sterett argues that White materially breached the Service Agreement the parties entered into and that there are no genuine issues of material fact, so summary judgment should be granted as a matter of law in favor of Sterett. [Filing No. 53 at 6.] Sterett contends that the plain language of the Service Agreement demonstrates the parties' intent to set forth the entire agreement concerning the Crane's rental for the Project. [Filing No. 53 at 6.] Sterett argues that the Service Agreement's plain language indicates that "White agreed to pay all operating and maintenance expenses for the Crane until the Crane was returned and actually received by Sterett." [Filing No. 53 at 6.] Sterett further contends that White agreed "to return the Crane to Sterett in as good condition as it was received 'regardless of the cause of damage or loss' at the termination of the Service Agreement." [Filing No. 53 at 6.] Finally, Sterett argues that "White agreed to pay rent to Sterett for the period beginning when the Crane was delivered to White until the Crane was returned to Sterett in good working condition, 'regardless of the inability of [White] to use the [Crane] because of breakdown, weather conditions or any other issue.'" [Filing No. 53 at 6-7.]

White responds by arguing that Sterett is relying "entirely on a document that was not part of the agreement between the parties." [Filing No. 67 at 1.] White contends that Sterett's

purported contract consists of two pages, but only one page was actually sent to and signed by White and only that one page constitutes the parties' agreement. [Filing No. 67 at 1.] White argues that there is no integration clause on the first page of the Service Agreement and, therefore, the Service Agreement is only partially documented and cannot represent the entirety of the parties' agreement. [Filing No. 67 at 10-11.] Next, White contends that the second page of the Service Agreement including the terms and conditions was not signed by White, was dated on a completely different date, has not been established as authentic, and is not part of the parties' actual agreement. [Filing No. 67 at 10.] White further asserts that the actual agreement between the parties was a partially oral and a partially written contract, and therefore is rendered an oral contract for which parol evidence should be considered. [Filing No. 67 at 12.] White states that Sterett orally agreed to at least four material terms outside of the written contract, including: (1) that the contract was not a bare rental agreement, but rather was a manned and maintained agreement; (2) that White must accept a Sterett operator as a condition to renting the Crane; (3) that Sterett's operator would be completely responsible for the operation of the Crane; and (4) that Sterett would assume the risk of loss and White would not be obligated to pay for any of Sterett's losses. [Filing No. 67 at 12.] Finally, White argues that Sterett has not adequately established its entitlement to damages. [Filing No. 67 at 17-18.]

On reply, Sterett argues that White admitted through its Answer to the Amended Complaint that the Bare Rental Terms are part of the Service Agreement. [Filing No. 70 at 2-3.] Sterett argues that White completely ignores the plain language on the first page of the Service Agreement, which states that the "[s]ignature of the customer acknowledges receipt of the bare rental terms and conditions and that the customer has read and agrees to them. The terms and conditions are binding." [Filing No. 70 at 4.] Sterett contends that because of White's judicial

10

admission and the language on the first page of the Service Agreement, there are no genuine issues of material fact concerning the terms of the parties' agreement and oral agreements should not be considered because the Service Agreement contains an integration clause demonstrating that both parties fully intended the Service Agreement to express their entire agreement regarding the Crane rental. [Filing No. 70 at 6-9.]

Sterett must establish three elements in order to succeed on its breach of contract claim: (1) the existence of a contract; (2) a breach of that contract by the defendant; and (3) damages suffered by the plaintiff as a result of the defendant's breach. *Collins v. McKinney,* 871 N.E.2d 363, 368 (Ind. Ct. App. 2007).[3] In contract cases, the Court's primary objective is to effectuate the intent of the parties at the time the contract was made, by examining the language the parties used to express their rights and duties. *Nikish Software Corp. v. Manatron, Inc.,* 801 F. Supp. 2d 791, 800 (S.D. Ind. 2011) (citing *Trustcorp Mortg. Co. v. Metro Mortg. Co., Inc.,* 867 N.E.2d 203, 212-13 (Ind. Ct. App. 2007)). The Court must read the contract as a whole, construing the language

---

[3] The Court notes that it is exercising diversity jurisdiction over this matter. [*See* Filing No. 19 (parties' Joint Jurisdictional Statement providing that Sterett is a Kentucky citizen, White is an Indiana citizen, and the amount in controversy exceeds $75,000, exclusive of interest and costs).] A federal court sitting in diversity must apply the choice-of-law provisions of the forum state. *Storie v. Randy's Auto Sales, LLC*, 589 F.3d 873, 879 (7th Cir. 2009) ("Because the district court's subject matter jurisdiction was based on diversity, the forum state's choice-of-law rules determine the applicable substantive law"). The parties rely upon Indiana law in analyzing Sterett's breach of contract claim. [*See, e.g.*, Filing No. 52 at 6 (Sterett citing Indiana law); Filing No. 67 at 12 (White citing Indiana law).] Absent a disagreement, the Court will apply Indiana law. *Mass. Bay Ins. Co. v. Vic Koenig Leasing*, 136 F.3d 1116, 1120 (7th Cir. 1998); *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits…. Courts do not worry about conflict of laws unless the parties disagree on which state's law applies. We are busy enough without creating issues that are unlikely to affect the outcome of the case (if they were likely to affect the outcome the parties would be likely to contest them)") (emphasis added). The Court will apply Indiana law in analyzing the pending motion.

11

to give meaning to all of the contract's words, terms, and phrases. *Id*. at 213. Additionally, the Court must interpret the contract so that provisions are harmonized, and not in conflict. *Id.*

If a contract is ambiguous or uncertain in its terms and if the meaning of the contract is to be determined by extrinsic evidence, the jury must ascertain the meaning of the contract's ambiguities. *I.C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co.,* 695 N.E.2d 1030, 1034 (Ind. Ct. App. 1998). Conversely, if the ambiguity in the contract arises because of language used and not because of extrinsic evidence, then its construction is "purely a question of law to be determined by the trial court." *Id.* Generally, when parties have reduced an agreement to a written document and have included an integration clause stating that the written document embodies the complete agreement between the parties, the parol evidence rule prohibits courts from considering extrinsic evidence to vary or add to the terms of the written contract. *Id.* at 1035. However, whether or not the parties intended the writing to be fully integrated must be based on relevant evidence and an integration clause does not entirely control the question of whether the parties intended for the writing to be completely integrated. *Franklin v. White,* 493 N.E.2d 161, 166-67 (Ind. 1986).

   1. *The Written Service Agreement*

One of the parties' key disputes is whether the second page of the Service Agreement – the Bare Rental Terms – was part of the parties' contract. Sterett points out that White admitted in its Answer that the two-page Service Agreement Sterett attached to the Amended Complaint was a true and accurate copy of the contract. [*See* Filing No. 16 at 3 (Defendant admits the allegation that a true and correct copy of the Service Agreement is attached to the Amended Complaint)]. An admission made in a pleading is binding on the party making it. *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996) ("When a party in a lawsuit makes an admission in its

pleadings or in its answer to a request for admissions, it makes a judicial admission that can determine the outcome of that lawsuit"); *Keller v. United States*, 58 F.3d 1194, 1199 n. 8 (7th Cir. 1995) (judicial admissions "have the effect of withdrawing a fact from contention").

White's admission that the two-page Service Agreement attached to the Amended Complaint was a true and correct copy of the Service Agreement does not equate to admitting that the second page of the Service Agreement (the Bare Rental Terms) controlled the transaction at issue. While the Court finds that White is bound by its admission that the two-page Service Agreement attached to the Amended Complaint is the Service Agreement entered into by White and Sterett, White can still argue – as it has – that the parties orally agreed to a manned and maintained arrangement that modified the terms of the Service Agreement.

        2. *Oral Modification of the Service Agreement*

White argues that the parties modified the Service Agreement when they orally agreed that White would use a Sterett operator for the Crane. It contends that this oral agreement rendered the Bare Rental Terms inapplicable, and converted the parties' agreement into a manned and maintained rental whereby Sterett assumed the risk for any loss related to the operation of the Crane. Sterett relies on the integration clause on page two of the Service Agreement (within the Bare Rental Terms), which provides that the Service Agreement is the "entire agreement" between Sterett and White. [Filing No. 52-5 at 2.]

Under Indiana law, "where the parties to an agreement have reduced the agreement to a written document and have included an integration clause that the written document embodies the complete agreement between the parties…the parol evidence rule prohibits courts from considering parol or extrinsic evidence for the purpose of varying or adding to the terms of the written contract." *Krieg v. Hieber*, 802 N.E.2d 938, 943 (Ind. Ct. App. 2004). But "the prohibition

13

against the use of parol evidence is by no means complete." *Id.* The Court must consider the parties' intentions when determining the impact of an integration clause. *Franklin*, 493 N.E.2d at 166. "The mere inclusion of an integration clause 'does not control the question of whether a writing is or was intended to be a completely integrated agreement.'" *Judson Atkinson Candies, Inc. v. Kenray Associates, Inc.*, 719 F.3d 635, 638 (7th Cir. 2013) (citing *America's Directories Inc. v. Stellhorn One Hour Photo, Inc.*, 833 N.E.2d 1059, 1067 (Ind. Ct. App. 2005)). Ultimately, "the weight to be accorded an integration clause will vary, depending on the facts and circumstances of each particular case." *Franklin*, 493 N.E.2d at 166.

The Court finds that genuine issues of material fact exist that preclude summary judgment. Put another way, White has set forth sufficient facts to show that a reasonable jury could conclude that the parties did not intend for the Bare Rental Terms to govern the Crane rental here. Putting aside the issue of whether a White representative received the second page of the Service Agreement containing the Bare Rental Terms, and whether a White representative with authority to sign the Bare Rental Terms did so, the Court notes evidence in the record that: (1) Sterett wanted White to use a Sterett operator for the Crane; (2) White resisted but eventually did so; and (3) typically where a lessor uses an operator from the lessee, the parties would not consider the agreement to be a bare rental agreement. [*See* Filing No. 65-1 at 3 (White representative Mr. Peterson attesting that "[d]uring the contract discussions, Sterett insisted, as a condition to entering into an agreement, that White man the Crane with a Sterett crane operator"); Filing No. 65-2 at 10 (Mr. Peterson testifying that he asked Sterett if it could provide an operator besides Mr. Freestone due to White's previous bad experiences with him, and no other operator was available); Filing No. 65-3 at 6-8 (White employee Terry Moon testifying regarding White's complaints about Mr. Freestone); Filing No. 65-6 at 5 (Sterett representative Matt Crisp testifying that if a customer does

14

not want to use a Sterett crane operator, "they should take the crane on bare rental and they can choose whoever they feel to run the crane," and that his view is "if it's not bare rental and we're supplying the operator, we'll dictate to you who the operator is…."); Filing No. 65-10 at 6-7 (Sterett sales representative Mike Williams providing confusing testimony that "bare rental" can either be a "bare rental" or "bare rental that is manned and maintained," and that Sterett's contract with White was "a bare rental with an operator" so was "a manned and maintained rental"); Filing No. 66 at 8 (William Sterett, III testifying that the parties had "an agreement that Mr. Freestone would be on the crane").]

These facts indicate ambiguity and uncertainty regarding the terms of the Service Agreement, and its application to the Crane rental. As noted above, under Indiana law, if a contract "is ambiguous or uncertain in its terms and if the meaning of the contract is to be determined by extrinsic evidence, its construction is a matter for the factfinder." *First Federal Sav. Bank of Indiana v. Key Markets, Inc.*, 559 N.E.2d 600, 604 (Ind. 1990); *see also I.C.C. Protective Coatings, Inc.*, 695 N.E.2d at 1034. The Court finds that these facts could lead a reasonable jury to conclude that the parties did not intend for the second page of the two-page Service Agreement attached to the Amended Complaint (which included the integration clause) to constitute the parties' full agreement. While the timing of the parties' discussions regarding Sterett providing the Crane operator is unclear, the confusion surrounding the parties' agreement, and the fact that White and at least one Sterett representative appear to agree that using a Sterett operator would generally result in a manned and maintained agreement (which could shift the assumption of risk to Sterett)

are enough to warrant denial of Sterett's summary judgment motion. These facts can be more fully developed at trial and considered by a jury.[4]

### III.
### CONCLUSION

For the reasons stated herein, the Court:

- **DENIES** White's Motion for Oral Argument on Sterett Crane & Rigging, LLC's Motion for Partial Summary Judgment, [Filing No. 68];

- **DENIES** White's Motion for Leave to File Surreply in Opposition to Plaintiff's Motion for Partial Summary Judgment, [Filing No. 72]; and

- **DENIES** Sterett's Motion for Partial Summary Judgment, [Filing No. 52].

The Court requests that the Magistrate Judge confer with the parties to address the possibility of an agreed resolution, or to establish a schedule for the upcoming July 17, 2017 trial.

Date: March 31, 2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

---

[4] Because the Court has found that summary judgment is inappropriate due to the existence of genuine issues of material fact surrounding the interpretation of the Service Agreement and the integration clause, it need not and will not consider White's argument that Sterett has not adequately established its entitlement to damages.

16